UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

N° 08-CV-3422 (JFB)
_____

JOHN VICTOR BALODIS,

Plaintiff,

VERSUS

MARK LEAVITT,
Secretary of the Department of Health and Human Services,

Defendant.

_____

**MEMORANDUM AND ORDER**
March 31, 2010
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff John Balodis ("plaintiff" or "Balodis") brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking review of the decision of the Commissioner of Social Security,[1] dated March 14, 2008, which found that plaintiff was not entitled to disability insurance benefits ("DIB") under the Social Security Act. Specifically, the Commissioner found that plaintiff had the capacity to work and was, therefore, not disabled.

Presently before the Court is the defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff seeks a reversal or remand of the Commissioner's determination. For the reasons set forth below, the Court denies defendant's motion for judgment on the pleadings and remands the case for further proceedings consistent with this Memorandum and Order.

---

[1] Although plaintiff names the Secretary of Health and Human Services as the defendant in this action, the Court construes the complaint as naming the Commissioner of Social Security. *See, e.g.*, *Keesing v. Apfel*, 124 F. Supp. 2d 134, 135 (N.D.N.Y. 2000) ("The only proper defendant in an action under section 405(g) is the Commissioner of Social Security." (citation omitted)); *see also Langella v. Bush*, No. 03 Civ. 5114(RWS), 2004 WL 2668400, at *4 (S.D.N.Y. Nov. 22, 2004).

I. BACKGROUND

A. Facts

1. Plaintiff's Medical History

Plaintiff, who was insured through December 31, 2008, alleges that he has been disabled since December 4, 2003. (R. 29.)[2] Plaintiff was born in 1961. (*Id.* at 68.) He is a high school graduate and attended radio broadcasting school for one year in 1980. (*Id.* at 96, 257.) He worked as a school custodian from 1982 to December 4, 2003. (*Id.* at 92-93.) As a custodian, plaintiff frequently lifted more than 50 pounds and sometimes more than 100 pounds. (*Id.* at 92-93, 255.)

Plaintiff fell in about June 2002. (*Id.* at 254.) He received open reduction internal fixation ("ORIF") surgery in July 2002 on his left femur and received physical therapy for three weeks at South Shore Healthcare. (*Id.* at 118-90, 249.) Plaintiff was given Tylenol for pain. (*Id.* at 178-81.) Plaintiff went back to work in December 2002, but fell while on the job in June or July 2003 (*Id.* at 249, 254.) In July 2003, plaintiff was admitted to Brunswick Hospital Center, where x-rays revealed that he had multiple fractures in his right ribs. (*Id.* at 198, 202.)

Plaintiff was admitted to Nassau University Medical Center on December 5, 2003 with left hip pain and a swollen tongue. (*Id.* at 207.) His mother had found him next to the stairs, and plaintiff did not remember anything. (*Id.*) Plaintiff had sustained a fracture of the left hip. (*Id.* at 32.) During plaintiff's hospitalization, he was treated by Dr. Sanjeey Agarwai, who stated that plaintiff had full range of motion in his shoulders, elbows, wrists, hands, knees, and ankles; plaintiff had reduced range of motion in his left hip. (*Id.* at 204-06.) Plaintiff had a minor fracture that did not require surgery. (*Id.* at 205-07.) Plaintiff told Dr. Agarwai about his history of hip injury, as well as alcohol abuse. (*Id.* at 204-06.)

Plaintiff was again admitted to Nassau University Medical Center on April 2, 2004 due to a fall with loss of consciousness. (*Id.* at 218.) Examination revealed 4/5 muscle "motor" ability in plaintiff's legs. (*Id.* at 220.) Plaintiff left the hospital against medical advice on April 6, 2004. (*Id.* at 218.) Plaintiff was given final diagnoses of ethanol abuse and syncope, as well as a secondary diagnosis of seizure disorder. No medication was prescribed at the time of discharge. (*Id.*)

2. Dr. Skeene

Plaintiff filed for Social Security DIB on April 29, 2005, alleging a disability onset date of December 4, 2003.[3] (*Id.* at 29.) At the Commissioner's request, Dr. Linell Skeene conducted a consultative examination of plaintiff on July 22, 2005. Plaintiff complained of left hip and right shoulder pain. (*Id.* at 221.) Plaintiff stated that the pain in his left hip was "stabbing" and "constant" with an intensity of 9/10. (*Id.*) By comparison, the pain in his right shoulder had an intensity of 5/10. (*Id.*) Plaintiff also reported having had one seizure. (*Id.*) Plaintiff stated that he drank alcohol in the

---

[2] References to "R." are to the Administrative Record in this case.

[3] Plaintiff had also filed an application for DIB on August 26, 2004, alleging disability from July 7, 2003. (R. 68-70.) The application was denied on February 23, 2005, and there is no indication that plaintiff appealed. (*Id.* at 88.)

2

past and currently drank approximately two or three times a year. (*Id.* at 222.) Plaintiff told Dr. Skeene that he was able to shower, bathe, and dress himself independently and that he cooked, cleaned, did laundry, and socialized with friends. (*Id.*)

Dr. Skeene noted, *inter alia*, that the range of motion in plaintiff's left hip was limited. (*Id.* at 223.) Specifically, Dr. Skeene found: "[t]he left hip can only be forwardly flexed to 80º, internal rotation of the left hip is 30º, external rotation of the left hip 40º, backward extension of the left hip 20º, abduction of the left hip 30º, adduction of the left hip 10º." (*Id.*) Dr. Skeene found a full range of motion of the knees and lower extremities bilaterally. (*Id.*) The examination also included an x-ray of plaintiff's left femur, which showed hardware transfixing and stabilizing fractures. (*Id.* at 224, 226.) A left knee x-ray showed "moderate degenerative joint disease." (*Id.*) Plaintiff limped, but used no assistive devices. (*Id.* at 222.) Dr. Skeene diagnosed plaintiff as status-post ORIF surgery with instrumentation for fracture of the left femur and left hip, as having probable arthritis of the right shoulder, and status-post drug abuse. (*Id.* at 224.) He concluded that plaintiff had "mild-to-moderate" limitations for prolonged standing, walking, and climbing steps due to limited range of motion of the left hip. (*Id.* at 224.)

### 3. Dr. Montorfano

On September 5, 2005, Dr. Montorfano, a state agency medical consultant, reviewed plaintiff's medical records. (*Id.* at 227.) Specifically, Dr. Montorfano found that plaintiff "may have pain in the left hip." (*Id.*) Dr. Montorfano also noted that recent x-rays "did not show evidence of AVN which one might suspect as the cause of the pain, given the Hx of ETOH, or of failure of the IM nail." (*Id.*) Dr. Montorfano suggested, *inter alia*, that plaintiff had the residual functional capacity to lift 20 pounds and to spend 2 out of 8 hours walking/standing and 6 out of 8 hours sitting. (*Id.*)

### 4. Dr. Goldman

At the request of plaintiff's counsel, plaintiff was given an orthopedic surgical evaluation by Dr. Donald Goldman on November 14, 2006.[4] (R. 234-37.) Dr. Goldman's examination revealed, *inter alia*, that plaintiff's "[h]ip flexion was restricted to 80 degrees with pain and tightness. Internal rotation was zero. External rotation was restricted to 20 to 30 degrees. There is some weakness against resistance on hip flexion." (*Id.* at 235.) Dr. Goldman also noted that plaintiff had "pain about the proximal scar in the vicinity of the greater trochanter and there are palpable irregularities that appear to be callus formation with maybe 'screw heads.'" (*Id.*) With respect to plaintiff's left knee, Dr. Goldman found that "[t]here is medial and lateral joint line pain, medial condyle pain, pain on patella compression. Lachman's is negative." (*Id.*) Dr. Goldman concluded that plaintiff was not able to fully kneel, squat, or bend. (*Id.*) Dr. Goldman's examination also revealed that plaintiff's right calf measured 14 5/8 inches, whereas the left calf measured 14 3/4 inches. (*Id.*) Plaintiff had a "positive Trendelenburg's on the left with weakness in the hip flexor musculature." (*Id.*)

In reviewing plaintiff's medical records, Dr. Goldman specifically disagreed with Dr. Skeene's conclusions regarding the range of motion of plaintiff's left hip and left knee,

---

[4] Plaintiff told Dr. Goldman that he had not drank alcohol in the past several years. (R. 234.)

stating that Dr. Skeene's conclusions were not accurate. (*Id.* at 236.) Dr. Goldman also noted that Dr. Skeene was not an orthopedic surgeon. (*Id.*)

Dr. Goldman's impression was that plaintiff was status post fracture of the left hip and femur, status post open reduction and internal fixation of the left hip, and had moderate to advanced degenerative joint disease of the left knee. (*Id.*) Dr. Goldman's prognosis was "guarded in view of the fact that [plaintiff] has permanent Orthopaedic impairments resulting in disability to his left femur and left knee." (*Id.* at 237.) Dr. Goldman concluded that, with respect to plaintiff's left hip, "[a]lthough the fracture has healed, there is still a painful functional restriction of motion by more than 40% with weakness evident on clinical examination." (*Id.*) Dr. Goldman also stated that plaintiff was not able to work in any type of employment that would require him to "walk more than one to two blocks, kneel, squat, bend, run, jump, climb, carry, lift, or do repetitive bending as a result of severe and incapacitating pain." (*Id.*) Dr. Goldman prescribed no medication for plaintiff. (*Id.* at 263.)

Dr. Goldman again examined plaintiff in January 2008. (*Id.* at 238-40.) Dr. Goldman concluded that "there is obvious weakness present, [plaintiff's] limp is worse, and the instability of his knee and hip are worse." (*Id.* at 239.) Dr. Goldman noted that plaintiff takes 600 milligrams of Motrin several times a day. (*Id.* at 238.) Dr. Goldman's prognosis remained "guarded and unchanged based upon persistent pain, restriction of motion, and comparison with [his] previous examination . . . ." (*Id.* at 240.) For instance, Dr. Goldman found that "[h]ip flexion was severely restricted to 80 degrees with pain in the groin and in the Y-ligament. Internal rotation was 0. External rotation was restricted to 10-20 degrees." (*Id.* at 239.) Dr. Goldman also found that the severity of plaintiff's impairment, with metallic implants, had resulted in a restriction of motion by more than forty percent. (*Id.* at 240.) Because of plaintiff's hip condition, he "does get pain when he has to sit for more than 20-25 minutes." (*Id.*) With respect to plaintiff's left knee, Dr. Goldman noted that the "severity of his knee impairment has resulted in recurvatum with instability and he is not able to kneel, squat, bend, run, jump or use stairs without pain . . . ." (*Id.*) Dr. Goldman advised plaintiff to use a cane for walking. (*Id.* at 238.) Dr. Goldman stated that plaintiff's injuries were "permanent, his condition is chronic and degenerative, and I do not feel he can work in any capacity and should receive Social Security Disability." (*Id.* at 240.)

Dr. Goldman examined plaintiff a third time on February 22, 2008, although the report based on this examination is dated May 2, 2008.[5] (*Id.* at 241-43.) Dr. Goldman found that plaintiff had developed advanced arthritis of his left knee, which had caused a sensation of the leg "giving-way and buckling." (*Id.* at 242.) Dr. Goldman discussed with plaintiff the possibility of a total left knee joint replacement. (*Id.*) With respect to plaintiff's hip, Dr. Goldman stated that "although the alignment is good, he does have evidence of instability in the left hip joint and either a re-surfacing procedure or a joint replacement should also be considered." (*Id.*) Dr. Goldman also stated that he had prescribed

---

[5] This report was not presented to the ALJ at the February 4, 2008 hearing. It was, however, submitted to the Appeals Council some time in June 2008. (R. 3, 7, 241-43.)

4

medication for plaintiff, though the medication is not specified. (*Id.*)

### 5. Vocational Expert Testimony

Mr. M. Schmidt testified as a vocational expert at the February 2008 administrative hearing. Schmidt testified that plaintiff's prior work as a school custodian was generally considered "medium duty" but that in plaintiff's case, because he lifted up to 100 pounds, the job was "heavy duty." (*Id.* at 268.) Schmidt was asked to consider a hypothetical individual of plaintiff's age, education, work experience, and who could perform sedentary work[6] but who had to alternate from a sitting to standing position at least every 30 minutes. (*Id.* at 268-69.) Schmidt testified that such a hypothetical individual would be unable to perform plaintiff's prior work as a custodian. (*Id.* at 269.) However, Schmidt testified that such a hypothetical individual could work as a food and beverage order clerk, and that there were 880,000 such jobs available nationally and 1,400 available regionally. (*Id.* at 269-70.) Schmidt also testified that such an individual could perform the job of an addresser, and that there were 575,000 such jobs available nationally and 1,300 available regionally. (*Id.* at 269.) Schmidt also testified that if the same hypothetical individual had difficulty maintaining attention to task for a two-hour period of time because of pain or discomfort, then such an individual would be unable to perform any kind of occupation that exists in either the national or regional economy. (*Id.* at 270.)

### 6. Plaintiff's Testimony

Plaintiff also testified at the February 4, 2008 hearing, and his testimony is summarized briefly below. Plaintiff stated that his condition has gotten "progressively worse" since December 2003. (*Id.* at 263.) Plaintiff testified that he experiences hip, back, neck, and right shoulder pain. (*Id.* at 252-54.) The pain in his hip and leg is constant and stabbing. (*Id.* at 253.) He testified that activities such as sitting, standing, walking, and driving aggravated his pain. (*Id.* at 254, 256.) Plaintiff testified that he could not walk more than about 100 feet. (*Id.* at 264.) He also testified that he had used a cane since the first fall in June 2002. (*Id.* at 254.) He has difficulty climbing stairs (*id.* at 251, 254) and must stand up after sitting for a short period of time (*id.* at 260). Plaintiff stated that he can drive a car for short five-minute trips to go to the drive-through grocery store because he is unable to walk through a store. (*Id.* at 256.) Plaintiff also stated that he does not take public transportation. (*Id.*) Plaintiff also testified that showering and other such activities are difficult. (*Id.* at 261-62.)

### B. Procedural History

On April 29, 2005, plaintiff filed a DIB application, alleging disability since December 4, 2003. (*Id.* at 29.) The claim was initially denied on September 21, 2005. (*Id.* at 40-43.) A hearing was held before an Administrate Law Judge ("ALJ") on February

---

[6] Pursuant to 20 C.F.R. § 416.967(a), "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

4, 2008. (*Id.* at 244-73.) On March 14, 2008, the ALJ issued a written decision finding that plaintiff was not disabled. (*Id.* at 26-38.) The Appeals Council denied plaintiff's request for review on June 24, 2008. (*Id.* at 4-7.)

Plaintiff filed the complaint in this action on August 21, 2008. On March 18, 2009, defendant answered and filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff submitted his opposition to the motion on May 26, 2009, requesting that the ALJ's decision be reversed or remanded for further review. This matter is fully submitted.

## II. DISCUSSION

### A. Legal Standard

#### 1. Standard of Review

A district court may set aside a determination by an ALJ only if the decision is based upon legal error or is not supported by substantial evidence. *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)). The Supreme Court has defined "substantial evidence" in Social Security cases as "more than a mere scintilla" and that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotations and citations omitted). Furthermore, "it is up to the agency, and not th[e] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

If the court finds that there is substantial evidence to support the Commissioner's determination, the decision must be upheld, even if there is substantial evidence for the plaintiff's position. *See Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey*, 145 F.3d at 111; *see also Jones*, 949 F.2d at 59 (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)).

#### 2. The Disability Determination

A claimant is entitled to disability benefits under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the Act unless it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations establishing a five-step procedure for evaluating disability claims. *See* 20 C.F.R §§ 404.1520(a)(4), 416.920. The Second Circuit has summarized this procedure as follows:

The first step of this process requires

the [Commissioner] to determine whether the claimant is presently employed. If the claimant is not employed, the [Commissioner] then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the [Commissioner] next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the [Commissioner] will find the claimant disabled. However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the [Commissioner] determines whether the claimant is capable of performing any other work.

*Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). The claimant bears the burden of proof with regard to the first four steps; the Commissioner bears the burden of proving the last step. *Brown*, 174 F.3d at 62.

The Commissioner must consider the following in determining a claimant's entitlement to benefits: "(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience." *Id.* (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam)).

B. Application

In opposing defendant's motion, plaintiff argues that the ALJ's decision is not supported by substantial evidence and is the result of legal error. Specifically, plaintiff argues that the ALJ failed to apply the "treating physician rule" to the medical opinions of Dr. Goldman by not giving those opinions "controlling weight." As set forth below, the Court concludes that the ALJ failed to provide sufficient reasons for not giving controlling weight to the opinions of Dr. Goldman and failed to explain what, if any, weight was given to those opinions. Therefore, the case must be remanded for such a determination.

1. Substantial Gainful Activity

At step one, the ALJ must determine whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). Substantial work activity is work activity that involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a), and gainful work activity is work usually done for pay or profit, 20 C.F.R. § 404.1572(b). Individuals who are employed are engaging in substantial gainful activity. In this case, the ALJ determined that plaintiff had not engaged in any substantial gainful activity since December 4, 2003. (R. 31, 35.) Substantial evidence supports this finding, and plaintiff does not challenge its correctness.

2. Severe Impairment

If the claimant is not employed, the ALJ then determines whether the claimant has a "severe impairment" that limits his capacity to work. An impairment or combination of impairments is "severe" if it significantly limits an individual's physical or mental

7

ability to perform basic work activities. 20 C.F.R. § 404.1520(c); *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. § 404.1521. The ALJ in this case found that plaintiff had the following severe impairments: "a history of fracture to the left hip and femur, secondary to a fall injury, status post open reduction and internal fixation of the hip and femur; advanced degenerative arthritis of the left knee; multiple rib fractures; syncope and seizure disorder; and a history of ETOH abuse." (R. 36.) Substantial evidence supports this finding, and plaintiff does not challenge its correctness.

### 3. Listed Impairment

If the claimant has such an impairment, the ALJ next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the ALJ will find the claimant disabled without considering the claimant's age, education, or work experience. 20 C.F.R. § 404.1520(c). In this case, the ALJ found that plaintiff's impairments did not meet any of the listed impairments in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 31, 36.) The ALJ noted that, although the plaintiff had suffered a fracture in the lower extremity, plaintiff had not shown any "specific, abnormal signs or symptoms required in order to 'meet' a listed impairment." (*Id.* at 31.) Substantial evidence supports this finding, and plaintiff does not challenge its correctness.[7]

### 4. Residual Functional Capacity and Past Relevant Work

If the claimant does not have a listed impairment, the ALJ determines the claimant's residual functional capacity, in light of the relevant medical and other evidence in the claimant's record, in order to determine the claimant's ability to perform his past relevant work. 20 C.F.R. § 404.1520(e). The ALJ then compares the claimant's residual functional capacity to the physical and mental demands of his past relevant work. 20 C.F.R. § 404.1520(f). If the claimant has the ability to perform his past relevant work, he is not disabled. *Id.* In this case, the ALJ found, as discussed further *infra*, that plaintiff does not have the residual functional capacity to perform his past relevant work as a custodian. (R. 36.) Substantial evidence supports this finding and plaintiff does not challenge its correctness.

### 5. Other Work

At step five, if the claimant is unable to perform his past relevant work, the ALJ determines whether the claimant is capable of adjusting to performing any other work. 20 C.F.R. § 404.1520(g). To support a finding that an individual is not disabled, the Social Security Administration has the burden of demonstrating that other jobs exist in significant numbers in the national economy that claimant can perform. 20 C.F.R. §

---

[7] Plaintiff does not argue that the ALJ erred in concluding that plaintiff did not suffer from a "listed impairment," and, at the February 4, 2008 hearing, plaintiff's counsel conceded that he was arguing "step five as opposed to a listing." (R. 250.)

8

404.1560(c); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

In this case, the ALJ found, relying primarily on the opinion of Dr. Skeene, that plaintiff's daily activities were within normal limits, and that plaintiff could squat fully and used no assistive device. (R. 34.) The ALJ also found that, other than the left hip, plaintiff had good range of motion, and that plaintiff had only "mild to moderate" limitation from prolonged standing, walking, and climbing.[8] (*Id.*) Based on these findings, the ALJ concluded that plaintiff had the residual functional capacity to perform a range of sedentary work, available in the national economy, with the option of sitting to standing every 30 minutes — specifically, that plaintiff could work as an "order clerk" or "addresser." (*Id.* at 33-35.) Therefore, the ALJ concluded that plaintiff "has not been under a disability at any time through the date of this decision" and was not entitled to benefits. (*Id.* at 35.) In reaching this conclusion, the ALJ rejected the opinion of Dr. Goldman, plaintiff's treating physician, that plaintiff suffered from permanent disability in his left femur and left knee.[9] For the reasons set forth below, the Court concludes that the ALJ did not provide sufficient reasons for rejecting Dr. Goldman's opinion.

a. Treating Physician Rule

The Commissioner must give special evidentiary weight to the opinion of the treating physician. *See Clark*, 143 F.3d at 119. The "treating physician rule," as it is known, "mandates that the medical opinion of the claimant's treating physician [be] given controlling weight if it is well supported by the medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); *see Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999); *Clark*, 143 F.3d at 119; *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993). The rule, as set forth in the regulations, provides:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

---

[8] The ALJ found plaintiff's complaints of pain, specifically of pain from prolonged sitting, to be not credible. (R. 35, 36.) The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment . . . ." (*Id.* at 36.)

[9] Defendant does not dispute that Dr. Goldman was plaintiff's "treating physician," and argues instead that the ALJ properly gave Dr. Goldman's opinion less than controlling weight. (*See* Def.'s Br. at 3, 18.)

9

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

If the opinion of the treating physician as to the nature and severity of the impairment is not given controlling weight, the Commissioner must apply various factors to decide how much weight to give the opinion. *See Shaw*, 221 F.3d at 134; *Clark*, 143 F.3d at 118. These factors include: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Clark*, 143 F.3d at 118. When the Commissioner chooses not to give the treating physician's opinion controlling weight, he must "give good reasons in his notice of determination or decision for the weight [he] gives [the claimant's] treating source's opinion." *Clark*, 143 F.3d at 118 (quoting C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)); *see also, e.g.*, *Perez v. Astrue*, No. 07-cv-958(DLI), 2009 WL 2496585, at *8 (E.D.N.Y. Aug. 14, 2009) ("Even if [the treating physician's] opinions do not merit controlling weight, the ALJ must explain what weight she gave those opinions and must articulate good reasons for not crediting the opinions of a claimant's treating physician."); *Santiago v. Barnhart*, 441 F. Supp. 2d 620, 627 (S.D.N.Y. 2006) ("Even if the treating physician's opinion is contradicted by substantial evidence and is thus not controlling, it is still entitled to significant weight because the treating source is inherently more familiar with a claimant's medical condition than are other sources."). A failure by the Commissioner to provide "good reasons" for not crediting the opinion of a treating physician is a ground for remand.

*See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

b. Application

In reaching his conclusion regarding plaintiff's ability to work, the ALJ relied primarily on the medical opinions of Dr. Skeene and Dr. Montorfano. In rejecting Dr. Goldman's opinion, the ALJ stated:

> We have contrasted [Dr. Skeene's] opinion to that of Dr. Goldman, who, as stated above, was seen at the request of claimant's attorney. Therefore, Dr. Goldman's findings are self-serving. Dr. Goldman disagreed with the findings of Dr. Skeene and noted that jobs requiring repetitive activities would be ruled out. When seen on January 15, 2008, the claimant indicated he had difficulty sitting more than 20-25 minutes, although this was not mentioned in the first report of Dr. Goldman dated November 14, 2006. Therefore, we find claimant's statement is not credible with regard to his sitting capacity. Lastly, we note the State Agency physician, Dr. Montorfa[no], indicates on September 5, 2005, that the claimant could lift up to 20 pounds and up to 10 pounds frequently; could stand/walk up to 2 hours per day; sit up to 6 hours; and was only limited to occasional climbing stairs, stooping, kneeling, and crouching, and some limitations affecting his ability to reach. Dr Montorfa[no] is considered an expert, and his opinion is entitled to significant weight.

(R. 34-35 (internal citations omitted).) As discussed below, the reasons given by the ALJ

for rejecting Dr. Goldman's opinion are insufficient. Furthermore, the ALJ did not explicitly consider the several factors required to decide how much weight to give the treating physician's opinion. Accordingly, the case must be remanded to the ALJ for further consideration of Dr. Goldman's opinion in light of this Court's analysis.[10]

As a threshold mater, the fact that Dr. Goldman treated plaintiff at the request of plaintiff's counsel is not by itself a sufficient reason to reject his opinion. *See Gunter v. Comm'r of Soc. Sec.*, No. 08-5544-cv, 2010 WL 145273, at *1 n.2 (2d Cir. Jan. 15, 2010) ("'[T]he mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of a report.'" (quoting *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1988))); *see also Ligon v. Astrue*, No. 08-CV-1551 (JG)(MDG), 2008 WL 5378374, at *10 (E.D.N.Y. Dec. 23, 2008) (holding that ALJ's rationale for rejecting treating physician's opinion, *i.e.*, that it would be expected to support plaintiff's workers' compensation claim, was not "a 'good reason' for not assigning controlling weight" to the opinion and that a "doctor's opinion is not intrinsically suspect because the patient is seeking other benefits" (citing 20 C.F.R. 416.927(d)(2))).

The only other reason provided by the ALJ for rejecting Dr. Goldman's opinion is that Dr. Goldman disagreed with Dr. Skeene and Dr. Montorfano.[11] Defendant argues that the ALJ properly gave less than controlling weight to Dr. Goldman's opinion because it was not consistent with the other substantial evidence of record. (*See* Def.'s Br. at 18.) However, Dr. Skeene examined plaintiff in July 2005 and Dr. Montorfano reviewed plaintiff's file in September 2005. Dr. Goldman, on the other hand, examined plaintiff more than one year later in November 2006, again in January 2008, and after the hearing in February 2008. The ALJ provided no analysis regarding the possibility that plaintiff's condition deteriorated in the significant gap in time between the doctors' opinions. When there is such a lengthy time period between opinions, the ALJ must explain his decision to choose the earlier opinion over the more recent opinion where deterioration of a claimant's condition is possible. *See, e.g.*, *Ligon v. Astrue*, No. 08-CV-1551 (JG)(MDG), 2008 WL 5378374, at *10 (E.D.N.Y. Dec. 23, 2008) ("None of those physicians [relied upon by the ALJ] . . . treated [plaintiff] in the 20 months prior to his hearing. While it is certainly appropriate to consider prior physicians' statements, to give them greater weight than a treating

---

[10] Of course, even if Dr. Goldman's medical opinion is given controlling weight on remand, his statement that plaintiff was unable to work and was entitled to Social Security benefits is not itself determinative. *See* 20 C.F.R. § 404.1527(e); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").

[11] Although the ALJ describes Dr. Montrofano as an expert, defendant concedes (Def.'s Br. at 17 n.10) that it appears that at least some of the September 2005 report was prepared by a non-physician disability analyst. (*See* R. 227-33.) To the extent that the ALJ relied on the opinion of a disability analyst as a medical opinion, such reliance was legal error. *See, e.g.*, *Barton v. Astrue*, No. 08-CV-0810 (FJS/VEB), 2009 WL 5067526, at *3 (N.D.N.Y. Dec. 16, 2009) ("The Court concludes that it was error to grant the disability analyst's opinion 'some weight,' as if it were a medical opinion." (collecting cases)).

physician's more recent findings without additional explanation amounts to legal error. It is possible, for example, that [plaintiff's] condition deteriorated . . . ."); *Huhta v. Barnhart*, 328 F. Supp. 2d 377, 386 (W.D.N.Y. 2004) (reversing ALJ's decision where ALJ relied on opinion of a non-examining and non-treating physician who "gave his opinion almost two years earlier in December 1995, and plaintiff's medical condition had substantially deteriorated since then. Plaintiff had undergone a total left knee replacement, and the degenerative arthritis in his right knee had worsened. Therefore, although [the doctor's residual functional capacity analysis] provided substantial evidence of plaintiff's condition prior to December 1996, reliance on that opinion thereafter was legal error, particularly in light of the medical opinions of [later treating physicians]"); *see also Ellington v. Astrue*, 641 F. Supp. 2d 322, 332 (S.D.N.Y. 2009) ("The Court notes . . . that in some cases two medical opinions can be consistent even if there are some differences in medical findings. Thus, it is important for the ALJ to explain why this particular difference in medical findings is substantial, particularly because [plaintiff] stated that his condition varied from day to day." (citation omitted)).

The possibility that plaintiff's condition deteriorated is not mere conjecture. There is, in fact, evidence in the record that plaintiff's condition worsened over time. For instance, Dr. Skeene concluded in July 2005 that plaintiff suffered from "moderate *degenerative* joint disease" in the left knee (R. 32 (emphasis added)), and the ALJ concluded that plaintiff had the "severe impairment" of "advanced *degenerative* arthritis of the left knee" (*id.* at 36 (emphasis added)). However, the ALJ did not explicitly consider the possibility that plaintiff's knee condition worsened from 2005 to 2008. Dr. Goldman also found in January 2008 that the instability of plaintiff's hip and knee had worsened since November 2006. (*Id.* at 239.) Finally, plaintiff testified that his condition had grown "progressively worse" since December 2003. (*Id.* at 263.) Therefore, in the absence of any analysis as to whether plaintiff's condition deteriorated in the substantial time period between the doctors' opinions, the Court concludes that the ALJ erred in declining to give controlling weight to the opinion of plaintiff's treating physician.[12]

Furthermore, there is no discussion in the ALJ's decision as to what, if any, weight the ALJ did give Dr. Goldman's opinion. There is no reference in the ALJ's decision to the various factors that must be considered in deciding what weight to give the opinion of a treating physician, including: (i) the frequency of examination and the length, nature, and extent of the treatment relationship, and (ii) whether the opinion is from a specialist. For

---

[12] The ALJ also noted an apparent inconsistency in plaintiff's complaints to Dr. Goldman, *i.e.*, that plaintiff complained in January 2008 that he could not sit for more than 20-25 minutes without pain but that this complaint did not appear in Dr. Goldman's November 2006 report. (R. 35.) To the extent the ALJ relied on this fact as a reason for rejecting Dr. Goldman's opinion, such reliance was, without further explanation, error. As a threshold matter, "[t]he fact that [the treating physician] also relied on [plaintiff's] subjective complaints hardly undermines his opinion as to her functional limitations, as a patient's report of complaints, or history, is an essential diagnostic tool." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (quotation omitted). Furthermore, the ALJ failed to consider, as discussed above, that the difference in plaintiff's complaints may have been due to the significant passage of time between those complaints.

instance, the ALJ did not explicitly consider the length or nature of plaintiff's treatment relationship with Dr. Goldman. The ALJ also did not explain the rejection of Dr. Goldman's opinion with reference to Dr. Goldman's status as an orthopedic specialist.

Defendant points to other evidence in the record that might have supported the ALJ's rejection of Dr. Goldman's opinion. (*See* Def.'s Br. at 18-20.) For instance, defendant argues that Dr. Goldman's 2008 opinions were inconsistent with his own earlier opinions.[13] Defendant also argues that less weight should be given to Dr. Goldman's opinion because he did not treat plaintiff on a frequent basis. However, none of these points was made by the ALJ; rather, the defendant is assuming that these were the factors that the ALJ had in mind in refusing to give Dr. Goldman's opinion controlling weight. Such assumptions are insufficient as a matter of law to bolster the ALJ's decision. *See Newbury v. Astrue*, 321 F. App'x 16, 18 (2d Cir. 2009) ("A reviewing court 'may not accept appellate counsel's post hoc rationalizations for agency action.'" (quoting *Snell*, 177 F.3d at 134)).

Because the ALJ failed to properly apply the treating physician rule, the Court concludes that remand is appropriate. As the Second Circuit has held:

> [w]e do not hesitate to remand when the Commissioner has not provided "good reasons" for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also, e.g.*, *Risitano v. Comm'r of Soc. Sec.*, No. 06-CV-2206(FB), 2007 U.S. Dist. LEXIS 58276, at *12 (E.D.N.Y. Aug. 9, 2007) (remanding case and directing the ALJ to "identify the evidence [the ALJ] did decide to rely on and thoroughly explain . . . the reasons for his decision" if the ALJ did not intend to rely on the opinions of plaintiff's treating physicians); *Torregrosa v. Barnhart*, No. CV-03-5275(FB), 2004 U.S. Dist. LEXIS 16988, at *18 (E.D.N.Y. Aug. 27, 2004) (remanding because "(1) there is a reasonable basis to doubt whether the ALJ applied the correct legal standard in weighing the opinions of [the treating physicians], and (2) the ALJ failed to give good reasons for the weight, or lack thereof, given to those opinions"). Accordingly, upon remand, the ALJ must re-consider and clarify his reasons, if any, for declining to give controlling weight

---

[13] The Court notes that the alleged inconsistency in Dr. Goldman's opinions could be explained by the gap in time between Dr. Goldman's examinations of plaintiff, as discussed above. *See, e.g.*, *Barton v. Astrue*, No. 08-cv-0810(FJS/VEB), 2009 WL 5067526, at *5 (N.D.N.Y. Dec. 16, 2009) ("[T]he Court notes that the evidence of Plaintiff's deteriorating condition calls into question the ALJ's rejection of Dr. Park's 2007 opinion. The ALJ gave Dr. Park's more restrictive 2007 opinion 'limited weight' because she rejected his explanation that Plaintiff's condition had changed since 2005. However, the evidence as described above indicates that Plaintiff's condition did change, as asserted by Dr. Park." (internal citation omitted)); *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 419-20 (W.D.N.Y. 2006) (holding that there was no inconsistency between different opinions given in 1996 and 1997 where treating physician obtained new medical evidence between the two opinions and that, in fact, the doctor's "ongoing analysis of plaintiff's condition is precisely the perspective a treating physician brings to the medical evidence").

to plaintiff's treating physician.[14]

\*\*\*

In sum, having carefully reviewed the record, the Court concludes that the Commissioner failed to properly apply the treating physician rule and that a remand is appropriate for such a determination.

III. CONCLUSION

For the foregoing reasons, the Court denies defendant's motion for judgment on the pleadings. This case is remanded for further proceedings consistent with this Memorandum and Order.[15] The Clerk of the Court shall close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 31, 2010
Central Islip, New York

\* \* \*

The attorney for plaintiff is John Martin Bigler, Esq., 1421 Wantagh Ave., Wantagh, NY 11793. The attorney for defendant is Robert B. Kambic, Assistant United States Attorney, Eastern District of New York, 610 Federal Plaza, Central Islip, NY 11722.

---

[14] Plaintiff also contends that the ALJ failed to properly assess plaintiff's credibility, and, therefore, failed to properly consider the vocational expert's opinion in this respect. Because the Court concludes that the ALJ erred in applying the treating physician rule, and that a remand is appropriate, the Court need not decide at this time whether the ALJ erred in assessing plaintiff's credibility. The Court notes that the ALJ concluded that plaintiff's testimony was not credible in light of his "own description of his activities and life style; the degree of medical treatment required; discrepancies between the claimant's assertions and information contained in the documentary reports; [and] the claimant's assertions concerning his ability to work." (R. 35.) The Court recognizes that "[i]t is the function of the Secretary, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (internal citations and quotations omitted). However, to the extent that the ALJ, on remand, re-evaluates the evidence in addressing the treating physician rule, in accordance with this Memorandum and Order, the ALJ should also consider whether that re-evaluation alters his assessment of plaintiff's credibility in light of the evidence as a whole.

[15] Because plaintiff was insured through December 31, 2008, Dr. Goldman's May 2, 2008 report is relevant to a determination of whether plaintiff was disabled during the time period at issue. (R. 29, 35.) On remand, therefore, the ALJ should include consideration of the May 2008 report (*see id.* at 241-43), which was not available at the February 4, 2008 hearing. *See Pollard v. Halter*, 377 F.3d 183, 193-94 (2d Cir. 2004).